IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| DAVID KEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 6:16-cv-0559-TMP |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff, David Key, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner")[1] denying his application for supplemental security income ("SSI").  Mr. Key timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties have consented to the jurisdiction of the undersigned in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73; accordingly, the court enters this memorandum opinion.

---

[1] The court takes judicial notice that Nancy A. Berryhill is now the Acting Commissioner of Social Security.  The Clerk is DIRECTED to change the style of the case accordingly.

Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

Mr. Key was 26 years old at the time of the Administrative Law Judge's ("ALJ") decision, and he has a tenth-grade education. (Tr. at 33, 50). He has no relevant past work experience. (Tr. at 33). Mr. Key claims that he became disabled on August 15, 1994, due to a learning disability and high blood pressure. (Tr. at 160).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, the claimant is not disabled and the evaluation stops. *Id*. If he is not, the Commissioner next considers the effect of all of the claimant's physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating

that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Key has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of his decision. (Tr. at 34). He first determined that Mr. Key has not engaged in substantial gainful activity since the alleged onset of his disability, in that he has never held a job. (Tr. at 26). According to the ALJ, plaintiff's has the following "severe" impairments: mild thoracic kyphosis, mild degenerative disc disease, dysthymic disorder, borderline intellectual functioning, hypertension, gastroesophageal reflux disease, osteoarthritis, history of gastritis, hiatal hernia, and obesity, based on the requirements set forth in 20 C.F.R. § 416.920(c). (Tr. at 26). However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 27). The ALJ found Mr. Key's allegations to be "not entirely credible," citing both the plaintiff's lack of seeking or receiving medical treatment,[2]

---

[2] Although the plaintiff's mother testified at the hearing that she could not afford to pay a "high doctor bill," there is not testimony that she ever found there to be a need for any diagnosis or treatment. (Tr. at 55).

the lack of objective evidence that confirmed the severity of the conditions or that the conditions could reasonably be expected to give rise to the symptoms alleged, and the opinions of both the medical and psychiatric consultative examiners. The ALJ determined that Mr. Key has the following residual functional capacity: light work that is unskilled and requires no climbing of ladders, ropes, or scaffolds; no work at protected [sic] heights or with hazardous machinery; no more than occasional stooping, crouching, or crawling; no operating of motor vehicles; no more than frequent [sic] interaction with coworkers and supervisors; and no more than occasional contact with the general public. (Tr. at 29).

Moving on to the fourth step of the analysis, the ALJ concluded that Mr. Key had no past relevant work. (Tr. at 33). The ALJ considered the testimony of a vocational expert, and employed 20 CFR § 404.965 as a guideline for finding that, with his RFC, Mr. Key is able to perform work in such unskilled occupations as garment sorter, dog bather, and marker. (Tr. at 34). He further determined that such jobs exist in a significant number in the state and nation. (Tr. at 34). The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since August 27, 2012," when he filed his application. (Tr. at 34).

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F3d 1155, 1158 (11th Cir. 2004), quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607,

620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

It is well established that the burden of showing an entitlement to benefits is on the claimant. An ALJ has a duty to develop the record beyond the evidence presented by the claimant in some instances, but "is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision." *Ingram v. Commissioner of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2001) (finding no duty to order testing where the record contained "ample evidence"), citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001). "It is only where a consultative examination is necessary for the ALJ to make a decision due to some conflict, ambiguity, or other insufficiency" in the evidence that an ALJ must order an additional consultative examination." *Hollis v. Colvin*, 2013 WL 5567067 * 4 (S.D. Ala. Oct. 9, 2013). Remand for

further development of the record is necessary only when "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* Even then, it is up to the claimant to "show that the lack of records created an evidentiary gap, resulting in unfairness or clear prejudice." *Id.*, quoting *Edwards v. Sullivan*, 939 F.2d 580, 586 (11th Cir. 1991). The ALJ has no duty to order additional examinations where the plaintiff "did not satisfy his duty to put any alleged mental impairments into controversy by adducing competent evidence of the same." *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1339 (M.D. Ala. 2001).

**III. Discussion**

Mr. Key is a young man who, at the time of his hearing, was living with his mother and brother. His mother and sister both receive disability benefits. Mr. Key has never been employed, and has never applied for a job. A typical day involves sitting at home, watching TV, and playing video games. He occasionally prepares himself a sandwich and sometimes does dishes. He does not drive or have a driver's license, and does not leave the house alone, except to go to his sibling's house. (Tr. at 180). His social contacts are limited to his siblings, his parents, and his grandfather.

Mr. Key alleges that the ALJ's decision should be reversed and remanded because, he asserts, the ALJ erred in failing to properly develop the record. (Doc. 14). Specifically, he argues that the ALJ erred in failing to order further testing to determine whether the claimant may meet the diagnosis for Asperger Syndrome.[3] The first indication that Mr. Key was alleging as a basis for disability that he had some autism-related disorder was when his attorney mentioned that possibility at the beginning of the ALJ's hearing. (Doc. 14, pp. 13-16).[4] In support of the argument that the ALJ should have ordered additional testing for Asperger's, plaintiff's counsel has submitted to this court a 2009 magazine article titled "Asperger Syndrome and the Difficulties of Diagnosing and Treating Related Conditions." (Doc. 14-1). In response, the Commissioner asserts that the ALJ had no special duty to require a specialized consultative examination because there

---

[3] According to Autism Speaks, Asperger Syndrome is "one of several previously separate subtypes of autism that were folded into the single diagnosis autism spectrum disorder (ASD) with the publication of the DSM-5 diagnostic manual in 2013." Affected children and adults have "difficulties in social interaction and exhibit a restricted range of interests and/or repetitive behaviors," but generally do not have "significant delays or difficulties in language or cognitive development." www.autismspeaks.org/what-autism/asperger-syndrome (Viewed September 22, 2017).

[4] The claimant was represented at the hearing by an attorney, Don Bevill, whose first remarks to the court were: "Well, your honor, as I said, I believe he has either some kind of social problem like Asperger's or—I mean, I'm not a doctor, of course, but he has some kind of problem where he can't get out of the house and can't function with people." (Tr. at 48). Counsel further stated that he had "no tests on his back;" however, the need for further tests for a back ailment was not raised on appeal. Counsel concluded by stating, "I would request that we have some more extensive testing of some kind because of absence of any records." (*Id.*)

was sufficient evidence already in the record to support the ALJ's finding. (Doc. 15).

The Court must be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the Plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

In considering the plaintiff's mental functioning, the ALJ noted that Mr. Key exhibited behavior at the hearing that was "of such significant avoidance that it was suggestive of autism or a similar disorder." (Tr. at 31). He based that observation on the "minimal eye contact" made by the plaintiff, and his brief, "almost nonresponsive" replies to the ALJ's questions. Plaintiff's counsel asserts now that this observation by the ALJ indicates the need for testing to determine if the plaintiff has Asperger Syndrome or some similar disorder. However, the ALJ further noted

that the behavior exhibited at the hearing had never been noted by any medical professional, in spite of psychiatric and medical evaluations performed in 2012, or by any school officials during his 10 years of formal education. The ALJ considered the report by Dr. Jerry Gragg, the licensed clinical psychologist, who conducted the mental status evaluation of Mr. Key. In fact, as the ALJ noted, Dr. Gragg reported that the plaintiff's eye contact was "fair," his verbal skills were adequate, and that he was able to establish a good rapport with the psychologist. Dr. Gragg reported that the claimant "was poised and cooperated readily with the interview process." (Tr. at 235). Similarly, when examined by a medical doctor, Dr. Ledet, the plaintiff apparently exhibited no difficulties in communicating, and no mental impairment was noted, even though Dr. Ledet was asked to examine him, in part, for a "learning disability." (Tr. at 243). Instead of a disability, Dr. Ledet described the plaintiff as "Well-dressed, well-nourished, in no acute distress…. No difficulty with ability to dress and undress himself. Hearing, claimant is able to understand normal conversational tone. Speech is 100% understandable." He described the claimant's psychological condition as "Positive for anxiety, depression, and insomnia." (Tr. at 245). As for the claimant's possible learning disability, Dr. Ledet's impression was, "With regard to allegation of learning disability, the claimant was able to recall 5/5 objects. Claimant was alert and

oriented to time and situation and person. Therefore, normal limitation noted." (*Id.*). In addition, when treated at the ER on another occasion, the medical records demonstrate that the plaintiff did not exhibit any signs of being withdrawn or avoidant, and that the plaintiff was able to communicate freely with the examining physician and to provide his own medical history. (Tr. at 31). Finally, the ALJ considered school records that showed that the plaintiff had completed the tenth grade, and had received average grades without the need for any special education courses. (Tr. at 206-207).

The ALJ determined that Mr. Key's unusual behavior at the hearing was "feigned, or at the very least anomalous of his typical presentation." (Tr. at 31). A review of the entire decision demonstrates that the ALJ's determination is supported by substantial evidence. The decision was both comprehensive and consistent with the applicable SSA rulings. The plaintiff did not meet his burden of offering any evidence that he had Asperger Syndrome or any other disorder relating to autism, and the evidence in the record was not in conflict, ambiguous, or incomplete such as might trigger the ALJ's duty to order additional examination. The record was sufficient to form a basis for the ALJ to make an informed decision. Accordingly, the ALJ's determination is due to be affirmed.

## IV. Conclusion

Upon review of the administrative record, and considering Mr. Key's argument, the Court finds the Commissioner's decision is supported by substantial evidence and is in accord with the applicable law. It is due to be AFFIRMED. A separate order will be entered affirming the decision and dismissing this case with prejudice.

DATED the 22nd day of September, 2017.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE